AUGUSTINE HEARD & others *vs.* ANDREW S. MARCH & others.

In this commonwealth the executors of a deceased respondent in a bill in equity may be brought in by a bill of revivor, although no service had ever been made on the testator.

Two out of three trustees of property held in trust for a private association, have no power to execute a deed of such property, unless the third has had an opportunity to consult and advise with them as to such conveyance; and this court has power as a court of equity to set aside a deed so made, and to order a reconveyance.

A deed of trust provided for five trustees, a majority of whom should govern, and that "if any trustee should be absent from the commonwealth, the others should have all the powers herein named." A second deed of the same trusts provided for three trustees, who should have all the powers of the first five, and should also have " the power to act by attorney duly authorized by deed." The trustees were to conform to the wishes of such of the *cestui que trusts*, as owned three fourths of the trust property. Two of the three trustees, owning more than three fourths of the property, in the absence of the third from the commonwealth, executed a deed of the trust property. *Held,* that the conveyance was valid, and that a bill in equity would not lie by such third trustee and the other *cestui que trusts* to set aside said deed and order a reconveyance.

BILL IN EQUITY, filed November term, 1846, by Augustine Heard, Francis J. Oliver, and William D. Messer, against Amos Binney, Andrew S. March, and Theodore Otis, praying for the reconveyance of a lot of land in Roxbury, and that the deed thereof might be set aside and the rents and profits accounted for, and for other relief.

The allegations of the bill, so far as they are material, set forth that, in 1836, Francis J. Oliver, of Boston, John Lemist, of Roxbury, and Amos Binney, James C. Dunn, Samuel S. Lewis, and Daniel Brodhead, all of Boston, associated themselves together as the Roxbury Land Company, under an indenture, the material clauses of which stated that the company was formed for the purpose of buying and selling land in Roxbury and Boston; which land, when purchased, was to be conveyed to the parties to the indenture, and the survivors and survivor of them in fee simple as joint tenants, and not as tenants in common. The company was limited in its duration to the term of ten years, but the power of extend-

ing it was given for such further time as might be declared and agreed, in any instrument in writing signed by three persons, who, at the time of making the same, should own at least three fourths of the whole number of shares in the concern.   All the real estate acquired was to be considered, as between the parties, to be of the nature of personal estate. The business of the company was to be transacted by five persons named as trustees in the indenture, and a majority of the trustees was to govern.   The indenture contained a clause that " if any or either of said trustees or their successors, shall be absent from the said commonwealth, or shall die, or neglect, or refuse, or be unable to execute the duties reposed in him or them, or shall cease to be a trustee or trustees in the premises, then and in every such case, the surviving or other trustee or trustees shall have all the power and be subject and holden to perform all the duties hereby reposed in or required of the trustees herein named."   It was also provided that the owners of three fourths of the amount vested in the concern might appoint or remove any of the trustees, and might give them any instructions touching the premises, which instructions the trustees covenanted to perform.   The capital stock of the company was to be divided into five thousand shares, to be held and transferred as personal property.

The bill then set forth that on or before February 15, 1845, Dunn, Oliver, Lemist, and Lewis, had by death or resignation ceased to be trustees, and Augustine Heard and A. S. March had become trustees in their stead : That on that day all the stock of the company was owned by or stood in the names of the present parties and Thomas Lord, who on that day executed a new indenture, continuing the company for five years longer, and that thereby March, Binney, and A. Heard were made trustees with the same general powers as before : That by the new indenture, the power of acting by a majority was not given to the trustees, and that they were authorized to act by attorney and the power of instruction by three fourths of the stockholders was taken away : That in 1845 March and Binney made a verbal contract with Theodore Otis, to sell him a part of the trust lands for $17,409.30,

49 *

which was far below its true value, and that afterwards a written agreement was made in December, 1845, to convey the land to Otis, both which agreements were made without consulting Heard, although he was in the state and could have been consulted, until November 18, 1845, when he sailed for Europe, and did not return till April 6, 1846: That on his return, March and Binney caused communications to be made to Heard, requesting him to ratify the sale, but that he refused to do so and offered to give fifty per cent. more for the land himself.

That during Heard's absence, he had an attorney here authorized to act for him in all cases that concerned him as trustee, and that a copy of the power of attorney was handed to said Binney soon after its execution, and was recorded and known to March: That shortly before his departure to Europe, Heard redelivered said power of attorney to said Thomas Lord, and thus renewed it, and that Binney and March both recognized and treated Lord as the attorney of said Heard: That said Lord was never consulted about, or informed of said sale till December 31, 1845, when he was requested to join in the deed to Otis: That during the whole of said A. Heard's absence, another power of attorney was in force, viz., to G. W. Heard, and that this was known to said March and Binney: That on April 7, 1845, said Binney and March executed and delivered a deed of the land to Otis, and took back a mortgage to Binney alone without any declaration of trust: That Otis knew all the facts, but accepted the deed and took possession of and still holds the deed.

To this bill, a demurrer was put in by March, in which Otis afterwards joined, but no service was made on Binney, he being at the time absent in Europe, where he died March 1, 1847, leaving a will, whereby he devised and bequeathed to Charles G. Loring, George S. Hillard, and Charles B. Wells, all of Boston, his real and personal estate in trust, and appointed them his executors. A bill of revivor was accordingly filed at November term, 1848, against the said executors, and against March and Otis. To this bill of revivor a demurrer was filed by the executors of Binney, on the

ground, that as no service had ever been made on Binney, the bill could not be revived against the executors. The demurrer to the bill of revivor was argued at the March term, 1849.

*C. G. Loring & B. Rand,* for the executors of Binney, cited 3 Daniel Ch. Prac. 1698.

*G. Minot,* for the complainants. We admit that by the general rule of equity, till a defendant has appeared, there is no cause in court against him, and that if he dies before appearance, the suit cannot be maintained against his personal representatives by a bill of revivor; but we contend that in this state no such reason exists. Here an action is commenced on the day of the date of the writ. *Gardner* v. *Webber,* 17 Pick. 407; and chancery process may be by writ. Rev. Sts. *c.* 90, § 117. By the 8th rule of the court, notice may be by publication. Appearance not being necessary to the jurisdiction, the reason of the rule of equity does not apply. It is doubtful whether the 7th rule of court, relative to the mode of bringing in representatives of a deceased party, applies to a case of real estate. Rev. Sts. *c.* 93, § 12, was also cited.

BY THE COURT. Demurrer overruled.

The demurrer to the original bill before stated, was on the ground that it did not make out a case for the equitable interposition of the court; that the allegations in it were so indefinite, vague, and ambiguous, that no case could be made out which would require the respondents to answer thereto, and that Binney was a necessary party to the said bill, and that it did not appear that he was ever served with process as appeared to said suit.

The hearing on the demurrer to the original bill took place at the March term, 1850.

*R. Choate,* for Otis.

*B. Rand,* for March.

*C. G. & F. C. Loring,* for the executors of Binney.

*G. Minot,* for the complainants.

SHAW, C. J. Under the second indenture reducing the num

ber of the trustees to three, the majority may act and decide; supposing that all are called upon to deliberate, act, and determine; but the provision in the first indenture, that three may execute a deed in the name of the party dissenting, does not exist in the second indenture. The provision that one may act by attorney, supersedes by necessary implication the provision of the first indenture, that the four others or any three may execute a deed. The provision of the second indenture, that either trustee may act by attorney, supersedes the provision that where one is out of the state, the others may execute all the powers. Therefore, in the absence of Heard, leaving an attorney known to the trustees, a contract made without the knowledge of the attorney, or in any case, except when the attorney, on notice, shall refuse or neglect to meet and act with the other two, is made without authority and not binding; and these facts being known to Otis, he cannot insist on holding the deed given by the other two, March and Binney. If therefore, the negotiation was made by Binney and March, without calling in Heard, if here, or his attorney, during his absence, and the contract was made and signed by March and Binney, without notifying Heard or his attorney of the proposal of Otis, it was a contract made in violation of the trust, and in equity the defendant Otis is bound to reconvey.

The authority of the trustees is not a mere naked power to do a ministerial act, as to seal a deed, or make livery of seisin. They were owners in fee of the land as joint tenants. But where the power is to deliberate and examine, and discretion and judgment are required there, although a majority may ultimately decide, yet all must deliberate and advise, or at least have full notice and opportunity to do so. The company, whose trustees they are, are entitled to the full benefit of the knowledge and discretion of them all.

As to the power to appoint an attorney, the power of the trustees was not a delegated power. They had the estate. They had duties to perform and these might be delegated. But if it were supposed to be a power delegated by the associates, they have all, by the second indenture, agreed that each

trustee might appoint a substitute, and thus the maxim that delegated authority cannot be delegated, does not apply. And this is aided by the consideration that by an article of the second indenture, it is provided that in case of the death of either of the trustees, the company shall be dissolved, implying that the business was not to be conducted and carried on by two trustees. The contract made by Binney and March, without the concurrence of Heard or of his attorney, was a violation of trust, and ought not to be carried into effect, but in equity, the land conveyed to Otis by the deed executed by Binney and March, ought to be restored to the trustees for the benefit of the company.

It is a case where the complainants can have no adequate remedy at law, and is within the jurisdiction of this court as a court of equity.                    *Demurrer overruled.*

At a subsequent term, the respondents filed their answers. The answer of March averred that a majority of the trustees could act under the second as well as under the first indenture, and that no trustee could delegate his trust to an attorney. It denied any contract with Otis in the summer or fall of 1845, but admitted a negotiation with Otis and Binney on or after December 1, 1845, which resulted in a contract. It also admitted knowledge of the power of attorney to Lord, but denied knowledge of its redelivery. It admitted knowledge that Lord claimed to act as attorney, but denied knowledge of power to G. W. Heard. It also averred a meeting of the trustees January 5, 1846, at which said Oliver and Lord were present, when the contract with Otis was produced, discussed and approved on a formal vote of March and Binney against Lord: the latter voting against it on the ground that the land was worth more, and that he wanted further time to consider of it.

The case was heard on the bill and answer, and on an agreed statement of facts, from which it appeared that Heard left the country in 1845, and returned the same year, that he left again in November, 1845, and did not return until April, 1846. The power of attorney to Lord was dated February

27, 1845, and was made before the first visit of Heard to Europe. It contained, among others, the following recital: " Whereas the said Augustine Heard is about to embark from the United States, and to remain absent in Europe and elsewhere, for some length of time, and it is necessary that some person should be empowered to represent him and to act for him, both in his personal capacity as a member and holder of stock in said company, and as a trustee of the estates and property of said company, &c." This power of attorney was redelivered to Lord by Heard, on the second departure of the latter for Europe, but the date was not changed. There was also a general power of attorney from Augustine Heard to G. W. Heard, dated May 17, 1841.

It was also agreed that neither Lord, Augustine Heard, or G. W. Heard were consulted in respect to the contract with Otis until after it was made; but before the deed was delivered, though after the contract was made, the expediency of making the bargain was talked over and discussed by March, Binney, and Lord, and assented to by March and Binney, but not by Lord.

The second indenture, under which this suit was brought, contained the following clause: " There shall be three trustees of said association only, instead of five, as provided in said first-mentioned indenture, whose estates, duties, powers, rights, privileges, and liabilities, and those of their successors, in these trusts, shall be the same as are herein contained, and such others as are in said first-mentioned indenture contained and are not hereby revoked or annulled. The present surviving and remaining trustees, viz: Augustine Heard, Andrew S. March, and Amos Binney, shall be the said three trustees; and each trustee and his successors shall have the right to act by attorney, duly authorized by deed. Upon the death of either of the trustees, the said association shall cease and be determined. It also appeared that at the time of the second indenture, Binney and March together owned more than four fifths of all the shares in the company. The case was argued at the March term, 1852.

*S. Greenleaf & G. Minot,* for the complainants. Under the

second indenture, a majority of the trustees had no power to act. Under the first indenture, there were five trustees and a majority, three might act, and no power of appointing an attorney existed. Under the second indenture, the number was reduced to three, and the power of appointing an attorney was given. If a majority of the trustees could act, they could control the whole concern, as they owned more than four fifths of the number of shares. Binney and March, as owners of three fourths of the stock, could not approve, as stockholders, the acts done by them as trustees. If a majority could act, yet all were bound first to consult together; but a consultation, after the majority had agreed to perform the act, cannot be called a consultation. Although Heard was out of the state when the contract was made, yet he had two attorneys here, authorized to act for him, and the power given to Lord was not limited to Heard's absence; but if so, it was renewed by the redelivery. Heard was authorized to delegate the deliberative as well as the ministerial part of his trust.

*C. G. Loring & R. Choate,* for the respondents.

The opinion was delivered at the March term, 1853, by

SHAW, C. J. 1. On the case as it now stands, it appears that the power of attorney given by Heard to Lord was limited by the recital of his intended absence. It was, therefore, at an end on his return to this country. And we think it was not renewed by the mere act of a redelivery, before his second absence, without any change of terms or date. By its date, it referred to the absence of the author then in prospect, and not to another and subsequent, and so upon its face, would apparently be exhausted by the first return to this country. Therefore, in December and January, when the contract was made, Heard had no attorney here competent to act in this trust. The power of attorney given to G. W. Heard three years before, to act in Augustine Heard's private affairs, did not extend to this special and peculiar authority and trust.

The two instruments are to be construed together, in ascertaining the rights, powers, and duties of those associates, and their trustees and agents, although to a considerable extent, the former has been modified by the latter. We may, there-

fore, consider that by force of the first indenture, if one trustee was out of the country, the other trustees had power to make contracts. And we are of opinion that March and Binney did not recognize and admit the legal authority of Lord to act for Heard, at the meeting in January, 1846, when he was summoned to attend the meeting of the trustees, because they expressly inserted a caution in their minutes, that whether he was entitled to act for Mr. Heard or not they did not know, but they had notified him, because he might be authorized, and he must act on his own responsibility, according to his legal authority. We think, therefore, that the two trustees, March and Binney, had authority to contract with Otis.

2. The provision in the first indenture was, that three fourths, in amount, of the stockholders, should have power to direct the trustees to dispose of the property of the association, and the trustees were bound to conform to the directions thus given, by three fourths of the stockholders, that is, of stockholders having three fourths of the amount of the whole stock. This provision was renewed by the second indenture. Under this arrangement, the trustees stood in a double capacity, both as stockholders and trustees. They had the power, therefore, as proprietors of more than three fourths of the whole stock in their own right, to make a requisition upon the trustees, to make the proposed contract of sale, and they made it in due form, before the deed was given; and it was the duty of the complainant, Heard, pursuant to the trust reposed in him to comply with it, and he has no right in equity to deny the validity of the deed made by the other two.

3. The general equity is in favor of the respondent Otis, who, for aught that appears, acted without notice of any defect in the authority, or of any want of harmony and unity in the wishes and views of the trustees. Besides; as these two trustees owned a large majority of the stock of the company, they must be presumed to have acted, in making this sale, according to their best judgment of the interests of the company, because, in promoting the interests of the company, they to so great an extent promoted their own.

The court are, therefore, of opinion that the complainants have shown no sufficient reason for annulling and setting aside the contract in question.

*Bill dismissed with costs.*